THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CASSANDRA VALLIANOS *et al.*, | CASE NO. C19-0464-JCC |
| Plaintiffs, | ORDER |
| v. | |
| HOWARD SCHULTZ, | |
| Defendant. | |

This matter comes before the Court on Defendant's motion to dismiss (Dkt. No. 23). Having considered the parties' briefing and the relevant record, the Court hereby GRANTS the motion for the reasons explained herein.

## I. BACKGROUND

In January 2019, Defendant Howard Schultz[1] commenced a book tour to promote his book, "From the Ground Up." (Dkt. No. 20 at 2.) Defendant said that he "planned to crisscross the count[r]y for the next three months as part of a book tour before deciding whether to enter the presidential race." (*Id.*) During his book tour, Defendant visited different cities and talked about his book. (*Id.* at 3–10.) The book tour stops all looked substantially similar: an interviewer and

---

[1] Defendant disputes whether he is properly named in this case. (*See* Dkt. No. 23 at 1.) Defendant asserts that 1560 LLC is the true defendant. (*See id.*) Regardless, the result is the same, and the Court will not resolve this dispute in this order.

Defendant discussed Defendant's book and politics; the talks were called "From the Ground Up"; the book was viewable to the audience from the stage; and the book was made available for purchase at the event. (*See id.*) Some of the book tour events cost money for viewers to attend. (*See id.*)

For example, on March 11, 2019, Defendant held a book tour event in Atlanta, Georgia. (*See id.* at 9.) This Atlanta event was called "From the Ground Up," it was moderated by Van Jones, and the book was viewable to the audience from the stage. (*Id.* at 9–10.) Tickets to the event were sold for $28, which "reflect[ed] the price of a first edition copy of the book plus tax." (*Id.* at 9.)

On March 13, 2019, Defendant sent out two text messages to people whose numbers he collected in voter records and who were registered as "No Party Affiliation." (*Id.* at 12.) Plaintiffs Cassandra Vallianos, Stacey Karney, and Mike Barker were three such people. (*Id.* at 12–15.) Prior to Defendant texting Plaintiffs, Plaintiffs had all registered their cell phone numbers on the Do Not Call ("DNC") Registry. (*Id.*)

The first text message Defendant sent said, "Howard Schultz will be speaking in Miami at 12:30! Watch live: https://hs.media.mi-a030[.]" (*Id.* at 13.) The second text message said, "Howard Schultz will be speaking about his vision for America in Miami at 12:30! Watch live: https://hs.media/mia030[.]" (*Id.* at 14.) If Plaintiffs followed the link, it took them to the homepage of Defendant's website ("Defendant's homepage"), which included a livestream of the Miami speech ("Defendant's Miami speech"), video clips of people expressing their thoughts about the United States' two-party political system, and a link to order Defendant's book. (*Id.* at 11; Dkt. No. 24.) While the link to order Defendant's book was at the bottom of the homepage, it appears that the homepage was not so big that the link to order the book was drowned out by the rest of the homepage. (Dkt. No. 24.)

During Defendant's Miami speech, Defendant is standing at a podium by himself with no

interviewer.[2] Defendant's book is not viewable to the audience from the stage; rather, American and Floridian flags are behind Defendant. *See* Speech Video. The speech is not referred to as "From the Ground Up," as Defendant's book tour stops were titled. *See id.* And not once does Defendant mention his book in the Miami speech. *See id.* Instead, Defendant talks extensively about his views on politics and his plans if he ran for president. *See id.* At the end of the speech, Defendant does not take questions from the audience, *see id.*, and he steps down into the audience and signs copies of his book. (Dkt. No. 20 at 10.)

Plaintiffs are a putative class who bring two claims against Defendant. (Dkt. No. 20.) The first is based on Defendant sending unwanted text messages to Plaintiffs without their consent and with the use of an auto-dialer, in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227(b)(1)(A)(iii) (the "TCPA Auto-Dialer claim"). (*Id.* at 17–18.) The second cause of action is based on Defendant sending telephone solicitations to Plaintiffs, despite their numbers being registered on the DNC Registry, in violation of the TCPA, 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) (the "TCPA Do Not Call claim"). (*Id.* at 18–19.) Defendant now moves to dismiss the TCPA Do Not Call claim. (Dkt. No. 23.)

## II. DISCUSSION

### A. Federal Rule of Civil Procedure 12(b)(6) Legal Standard

The Court may dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678.

A plaintiff is obligated to provide grounds for his or her entitlement to relief that amount

---

[2] The Court viewed Defendant's Miami speech at: https://www.youtube.com/watch?v=o4TEod-cZ08 (hereinafter, cited to as "Speech Video").

to more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

If the Court finds that the complaint fails to state a plausible claim for relief, then it must dismiss the action with leave to amend "unless it is clear . . . that the complaint could not be saved by any amendment." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

### B. Judicial Notice

In his motion, Defendant asserts that the Court should take judicial notice of two webpages: (1) Defendant's homepage that was accessible to Plaintiffs via the link provided in Defendant's text messages; and (2) a video of Defendant's Miami speech. (*See* Dkt. Nos. 23 at 6 n.4, 29 at 4 n.2.)

Generally, the Court may not consider material outside of the pleadings when assessing the sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). There are two exceptions to this rule. First, the incorporation-by-reference doctrine allows the Court to treat certain material as though it is part of the complaint itself. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). "[A] court may consider evidence on which the complaint necessarily relies if: (1) the complaint refers to the [material]; (2) the [material] is central to the plaintiff's claim; and (3) no party questions the authenticity of the [material] attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Second, the Court is permitted to take judicial notice of facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is not subject to reasonable dispute is if it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Both Defendant's homepage and Defendant's Miami speech are subject to incorporation-by-reference. Plaintiffs' underlying theory for their TCPA Do Not Call claim is that Defendant's text messages, which invite text recipients to view Defendant's Miami speech and provide links to Defendant's homepage and Defendant's Miami speech, were solicitations to purchase Defendant's book. (*See* Dkt. No. 20.) Plaintiffs assert that Defendant's texts were thus sent for the purpose of getting text recipients to buy Defendant's book and getting recipients to watch another one of the stops on Defendant's book tour (which encourages book purchases). (*See id.*) Therefore, both Defendant's homepage and Defendant's Miami speech are properly incorporated by reference into Plaintiffs' complaint, and the Court will consider those materials in ruling on Defendant's motion.

### C. TCPA Do Not Call Claim

"No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . ." 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). The TCPA defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase . . . of . . . goods . . . ." 47 C.F.R. § 64.1200(f)(14). The Court evaluates the question of whether a message or phone call constitutes a telephone solicitation by looking at the context of the message and by using "a measure of common sense." *See Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012). Text messages constitute a telephone solicitation even if the text message "serves a 'dual purpose'—that is, includes both advertising/telemarketing *and* merely informational or transactional communications . . . ." *An Phan v. Agoda Co. Pte. Ltd.*, 351 F. Supp. 3d 1257, 1262 (N.D. Cal. 2018).

Defendant argues that Plaintiffs' TCPA Do Not Call claim fails because the text messages were not solicitations. (*See* Dkt. No. 23.) In analyzing whether the text messages constitute solicitations, the Court will look to the text messages themselves, the webpage the text messages directed text recipients to (Defendant's homepage), and the speech referenced in the

text messages (Defendant's Miami speech).

With regard to the text messages themselves, they say nothing about purchasing Defendant's book. (*See* Dkt. No. 20 at 13–14.) Instead, the text messages encourage recipients to view Defendant's speech and provide a link to do so. (*See id.*) And as discussed further below, the purpose of Defendant's Miami speech was not to encourage viewers to purchase Defendant's book. Therefore, the Court finds that the plain language of the text messages did not encourage recipients to purchase Defendant's book.

With regard to Defendant's Miami speech, the closeness in time between Defendant's Miami speech and the prior book tour stops does not automatically turn Defendant's Miami speech into a book tour stop. In fact, Defendant's Miami speech is substantially different from his book tour stops. For his book tour stops, the talks shared the same title as his book, his book was prominently viewable on the stage by the audience, Defendant spoke at length about his book, and his book was available for sale. (*See* Dkt. No. 20 at 3–10.) In contrast, at Defendant's Miami speech, no books were viewable from the stage by the audience, the speech was not titled the same as his book, Plaintiffs do not allege that Defendant's book was available for purchase, and most importantly, Defendant did not once mention his book. (*See id.* at 10); *see also* Speech Video. Further, Defendant stepping down into the audience to sign books is just a way for a potential presidential candidate to sign autographs—he is not encouraging the purchase of his book by merely signing a book. It is clear to the Court that the only purpose of Defendant's Miami speech was to discuss his political views in anticipation of a potential run for president. *See* Speech Video. Defendant's Miami speech did not have a dual purpose of promoting his book. *See id.* Therefore, the Court finds that Defendant's Miami speech did not encourage text message recipients to purchase Defendant's book.

With regard to Defendant's homepage, the mere inclusion of a link to a website on which a consumer can purchase a product does not transform the whole communication into a solicitation. *See An Phan*, 351 F. Supp. 3d at 1262–63. The option to purchase Defendant's book

was not at the top of Defendant's homepage and was not the part of the homepage that Defendant's text messages directed recipients to view. (Dkt. No. 24.) Rather, the invitation to purchase Defendant's book was just a portion of Defendant's homepage, which is not enough to turn the text message into a solicitation. *See An Phan*, 351 F. Supp. 3d at 1262–63. And most importantly, Defendant's homepage was not the focus of the text messages. (*See* Dkt. No. 20 at 13–14.) Defendant's homepage was just a way to facilitate what Defendant's text messages actually encouraged—viewing Defendant's Miami speech (which, as discussed above, was not made for the purpose of selling Defendant's book). (*See id.*) Therefore, the Court finds that Defendant's homepage, in this context, did not have the purpose of selling Defendant's book.

The Court finds that the text messages sent by Defendant to Plaintiffs do not constitute a "telephone solicitation" within the meaning of the TCPA. Because it is clear to the Court that Defendant's text message and Defendant's Miami speech were not made for the purpose of selling his book, Defendant's motion to dismiss Plaintiffs' TCPA Do Not Call claim is GRANTED.[3] The Court also finds that the claim should be dismissed with prejudice because the claim could not be saved with any amendment.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Dkt. No. 23) is GRANTED and Plaintiff's TCPA Do Not Call claim is DISMISSED with prejudice.

DATED this 8th day of October 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[3] Because the Court dismisses Plaintiffs' claim on this ground, it declines to reach Defendant's other argument for why dismissal is appropriate. (*See* Dkt. No. 23.)